## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**ex rel., UNDER SEAL** | Case No._____ |
| **Plaintiff,** | **Complaint for Violations of the Federal False Claims Act, 31 U.S.C. § 3729** *et seq.* |
| **v.** | **FILED UNDER SEAL** |
| **UNDER SEAL** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**ex rel., Fei Guan**<br><br>         **Plaintiff,**<br><br>v.<br><br>**ADVANCED SYSTEMS TECHNOLOGY**<br>**AND MANAGEMENT, INC.**<br>7925 Jones Branch Drive,<br>Suite 5400<br>McLean, VA 22102<br><br>**AND**<br><br>**QI TECH, LLC,**<br>7925 Jones Branch Drive<br>Suite 5400<br>McLean, VA 22102<br><br>**AND**<br><br>**ADVANCED FOREDATA SYSTEMS JV,**<br>**LLC**<br>7925 Jones Branch Drive,<br>Suite 5400<br>McLean, VA 22102<br><br>**AND**<br><br>**FOREDATA TECHNOLOGY INC.**<br>313 Greenhill Street<br>Great Falls, VA 22066<br><br>**AND**<br><br>**BING RAN**<br>7925 Jones Branch Drive,<br>Suite 5400 | Case No._____<br><br>**Complaint for Violations of the Federal False**<br>**Claims Act, 31 U.S.C. § 3729** *et seq.*<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED** |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

McLean, VA 22102

**AND**

**SHANGWU QI**
7925 Jones Branch Drive,
Suite 5400
McLean, VA 22102

**AND**

**JIANYANG SONG**
313 Greenhill Street
Great Falls, VA 22066

**Defendants.**

## INTRODUCTION

1.      *Qui tam* Relator Fei Guan ("Guan" or "Relator"), by and through counsel, on

behalf of himself and the United States of America, brings this action against Defendants

Advanced Systems Technology and Management, Inc. ("AdSTM"); Qi Tech, LLC ("Qi Tech");

Advanced ForeData Systems JV, LLC ("AFSJV"); ForeData Technology, Inc. ("ForeData

Technology") (the "Corporate Defendants"); Bing Ran; Shangwu Qi; and Jianyang Song, (the

"Individually Named Defendants") (collectively, "Defendants") for money damages and civil

penalties arising out Defendants' violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.*

2.      This *qui tam* complaint arises out of Defendants' abuse of the Small Business

Administration's ("SBA") Section 8(a) Business Act, 15 U.S.C. § 637(a) ("8(a) Program") and

the false statements and certifications that Defendants made to the SBA and to other federal

agencies over the past decade.

3.      Under the 8(a) Program, government agencies set aside contract opportunities for

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

socially and economically disadvantaged businesses.  In order to be considered for a Section 8(a) set-aside contract, the company must be certified as a Section 8(a) company by the SBA.

4.      In other words, a valid 8(a) designation from the SBA is a pre-requisite to bidding for or obtaining an 8(a) set-aside contract.  And the SBA requires each Section 8(a) company to certify on an annual basis that it still meets all requirements of a bona fide Section 8(a) company.

5.      In order to be eligible for the SBA's 8(a) program, a socially and economically disadvantaged individual must own at least 51% of the company or 51% of that company's publicly traded stock.  In addition, the company must be controlled by a socially and economically disadvantaged individual.

6.      Companies graduate from the 8(a) Program after nine years.  Once a company graduates from the program, the disadvantaged business and the disadvantaged individual controlling the business are ineligible to submit proposals for Section 8(a) set-aside contracts.

7.      Defendants engaged in a fraudulent course of conduct that enabled them to bid on and receive contracts set-aside for valid participants in the 8(a) program.

8.      Qi Tech, conspiring with all Defendants, obtained multiple government contracts from a host of government agencies based on misrepresentations concerning the legitimacy of its Section 8(a) designation.  Qi Tech represented to the SBA and numerous other government agencies that it was run by a statutorily defined "disadvantaged individual" when it was, in fact, not.  *See* 13 C.F.R. § 124.103 *et seq.*

9.      Qi Tech submitted numerous false claims to the Government in the form of invoices for their unlawfully obtained 8(a) contracts.  In submitting these invoices, Qi Tech certified that it was a legitimate Section 8(a) business when it, in fact, was not.  As set forth more

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 4 -

fully below, the remaining Corporate Defendants conspired with Qi Tech to do so.

10.     As a result of all Defendants' fraudulent and unlawful actions, millions of dollars of Government funds that were designated for businesses owned and controlled by socially and economically disadvantaged persons were instead diverted to the Defendants.  In so doing, Defendants abused and thwarted the purpose and objectives of the Section 8(a) business development program.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this complaint pursuant to 31 U.S.C. § 3729, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States.

12.     This Court has personal jurisdiction over defendants AdSTM, Qi Tech, AFSJV, and ForeData Technology pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because AdSTM, Qi Tech, AFSJV, and ForeData Technology transact business and possess real property in this judicial district, and maintain their principal place of business in this judicial district.

13.     This Court has personal jurisdiction over defendants Ran, Qi, and Song pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the Individually Named Defendants transact business and possess real property in this judicial district.

14.     Venue is appropriate pursuant to 31 U.S.C.  § 3732(a) because defendants AdSTM, Qi Tech, AFSJV, ForeData Technology, Ran, Qi, and Song can be found in and transact business in this judicial district.

## PARTIES

15.    Relator Guan is a Virginia resident and current AdSTM employee working as the Director of Business Development.  Relator Guan began his employment with AdSTM in 2008 and, at Ran's instruction, also performs work for Qi Tech, AFSJV, and ForeData Technology.

16.    Defendant AdSTM is a Virginia Corporation with a principal place of business at 7925 Jones Branch Drive, Suite 5400, McLean, Virginia 22102.  AdSTM is a government contractor specializing in science and technology based engineering and management consulting. AdSTM contracts with multiple federal agencies, including the Nuclear Regulatory Commission, the Department of Transportation, the Department of Energy, and the Department of Defense.

17.    Defendant Qi Tech is a Virginia Corporation with a principal place of business at 7925 Jones Branch Drive, Suite 5400, McLean, Virginia 22102.  Qi Tech is a government contractor specializing in technical, programmatic, and engineering services.  Qi Tech contracts with multiple federal agencies, including the Department of Transportation, Nuclear Regulatory Commission, and the Department of Defense.

18.    Defendant AFSJV is a Virginia Corporation with a principal place of business at 7925 Jones Branch Drive, Suite 5400, McLean, Virginia 22102.  AFSJV is a joint venture between AdSTM and ForeData Technology.  AFSJV contracts with Federal Agencies, including the Department of Defense.

19.    Defendant ForeData Technology is a Virginia Corporation with a principal place of business at 313 Greenhill Street, Great Falls, Virginia 22066.  ForeData Technology is a government contractor providing engineering and management consulting services.  ForeData Technology contracts with federal agencies through its joint venture, AFSJV.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 6 -

20.     Defendant Bing Ran is a Virginia resident and the former CEO of AdSTM.  Ran also controls Qi Tech, ForeData Technology, and AFSJV, identifying himself as Qi Tech's Chief Executive Officer.

21.     Defendant Shangwu Qi is the founder of Qi Tech.  Qi exercises no control or authority over Qi Tech's operations and strategic decisions.

22.     Defendant Jianyang Song is a Virginia resident and the President and Chief Executive Officer of ForeData Technology.  Song is listed as the sole officer of ForeData Technology.

## FACTUAL ALLEGATIONS

**The False Claims Act**

23.     The False Claims Act provides that any person who knowingly submits or causes to be submitted a false claim to the Government is liable for civil penalties plus three times the amount of damages the Government sustained.

24.     For purposes of the FCA, the terms "knowing" and "knowingly" mean that a person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.  No proof of specific intent to defraud is required for a successful claim under the FCA.

**SBA Section 8(a) Certification Program for Minority Set Asides**

25.     The 8(a) Program permits the United States to set aside certain contracts benefitting Section 8(a) program Participants.  This allows small, minority-owned businesses to compete for government contracts on a more even playing field.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 7 -

26.     To qualify as a Section 8(a) program participant, a company must meet three requirements:

a.  The company must be socially and economically disadvantaged.  15 U.S.C. § 637(a)(4)(A).  For a company to be socially and economically disadvantaged, either one or more socially and economically disadvantaged persons must unconditionally own at least 51% of the company, or 51% of the publicly traded stock must be unconditionally owned by one or more socially and economically disadvantaged individuals.  15 U.S.C. § 637(a)(4)(A)(i)-(ii).

b.  The management and daily business operations must be controlled by one of more individuals that *are both* socially disadvantaged and economically disadvantaged.  15 U.S.C. § 637(a)(4)(B); *see also* 13 C.F.R. § 124.106 (noting that control includes the day-to-day management of the company).  Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities.  15 U.S.C. § 637(a)(5).  Economically disadvantaged individuals are those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area that are not socially disadvantaged.  In determining the degree of diminished credit and capital opportunities the Administration shall consider, but not be limited to, the assets and net worth of such socially disadvantaged individual.  15 U.S.C. § 637(a)(6).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 8 -

    c.   Each Section 8(a) program participant must certify on an annual basis that each of the above mentioned requirements concerning ownership and control of the company still exist.  *See* 13 C.F.R. § 124.112.

    d.   Non-disadvantaged individuals may be involved in a participant's management, but no non-disadvantaged individual or family member may (1) exercise actual control or have the power to control the participant, (2) be a former employer or a principal of a former employer of any disadvantaged owner of the applicant unless the SBA determines that the relationship does not give the former employer actual or potential control, and (3) cannot receive compensation in any for that exceeds the compensation received by the highest officer.  13 C.F.R. § 124.106.

27.    The SBA defines a non-disadvantaged individual as any individual who does not claim disadvantaged status, does not qualify as disadvantaged, *or upon whose disadvantaged status an applicant or Participant does not rely in qualifying for the 8(a) program.*  13 C.F.R. § 124.3 (emphasis added).  "Participant" means the small business concern admitted to participate in the 8(a) Program.  *Id.*

28.    In other words, an individual is *per se* non-disadvantaged unless that individual is the person upon whom the business's 8(a) eligibility is based.

29.    Furthermore, individuals attempting to claim disadvantaged status must have a net worth of less than $750,000.  13 C.F.R. § 124.1002(c).

30.    The Section 8(a) program requires each participant to submit the following annually:

    a.  A personal financial statement for each disadvantaged owner;

    b.  A record of all payments made by the Program Participant to each of its disadvantaged owners or to any person or entity affiliated with such owners; and

    c.  Information the Administration may deem necessary to make the required determinations.

31.    After being certified by the SBA, a company may bid on contracts from government agencies that are set aside for Section 8(a) certified companies with less competition.

32.    Under United States Code and Code of Federal Regulations, an applicant for Section 8(a) certification and those companies seeking government contracts for these set aside programs have certain obligations, including not making false statements or misrepresentations of material facts concerning the certification process and also when bidding and contracting for payment of monies under these set aside contracts. *See* 15 U.S.C. § 637; 18 U.S.C. § 1001; and 15 U.S.C. § 645.

33.    Once a concern or disadvantaged individual upon whom eligibility was based has participated in the 8(a) BD program, neither the concern nor that individual will be eligible again. *See* 13 C.F.R. 124.108.

**AdSTM's Founding**

34.    On or about November 25, 1996, Alice Guan formed AdSTM as a Virginia corporation. At the time, Alice Guan and Ran were married.

35.    AdSTM's principal office was located at 8229 Boone Blvd., Suite 520, Vienna, Virginia 22182. AdSTM later moved to its current principal place of business at 7925 Jones

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 10 -

Branch Drive, Suite 5400, McLean, Virginia 22102, but AdSTM's registration with the Virginia Secretary of the Commonwealth still lists its principal office at 8229 Boone Blvd., Suite 520, Vienna, Virginia 22182.

36. AdSTM applied for Section 8(a) eligibility based solely on Alice Guan's disadvantaged status as an Asian Pacific American.  On or about June 4, 1999, AdSTM obtained SBA Section 8(a) certification, and AdSTM began bidding on 8(a) set-aside contracts.  AdSTM has grown to employ approximately eighty-six people.

37. AdSTM's SBA User ID is P0186420, and its SBA 8(a) certification case number is 104869.

38. Despite Alice Guan being the sole individual upon whom the disadvantaged status was based in securing AdSTM's 8(a) eligibility, Ran controlled AdSTM.  And because Ran did not use his own disadvantaged status as an Asian Pacific American, he was, by regulation, a non-disadvantaged individual under 13 C.F.R. § 124.3

39. Ran served as the Chief Executive Officer during AdSTM's 8(a) eligibility exercising actual control over AdSTM and also received the highest compensation in the company.

40. On or about June 4, 2008, AdSTM graduated from the SBA's Section 8(a) program.  As soon as AdSTM graduated from the 8(a) program, Alice Guan sold a 2% share of AdSTM to Ran, giving Ran majority control of the organization.

41. Ran continued to serve as AdSTM's Chief Executive Officer until in or around 2014 when AdSTM designated Gary Bell as the Chief Executive Officer on paper.  But Ran remained the *de facto* Chief Executive Officer and continued to control AdSTM.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 11 -

42.     AdSTM further lists Tom Dunn as the Vice President for Department of Defense support, Sergey Katsenelenbogen as the Senior Vice President for NRC Support, and Jen Kim as a Vice President and Corporate Controller.

43.     AdSTM's ownership remains divided between Alice Guan and Ran in a structure established during the couple's divorce.  In addition to his *de facto* control, Ran maintains a seat on AdSTM's board of directors.

**Shangwu Qi qualifies Qi Tech in the 8(a) program then turns over to Ran.**

44.     On or about November 20, 2003, Defendant Shangwu Qi formed Qi Tech as a Virginia Corporation.

45.     Qi Tech's principal office was initially listed as Qi's personal residence, but it now lists its principal place of business at 7925 Jones Branch Drive, Suite 5400, McLean, Virginia 22102; this is also AdSTM's exact business address.  Qi Tech's registration with the Virginia Secretary of the Commonwealth still lists the principal office at 8229 Boone Blvd., Suite 520, Vienna, Virginia 22182, which was AdSTM's former business address.  AdSTM and Qi Tech both changed their addresses at the same time.

46.     Qi used his Asian Pacific American status to apply for Qi Tech's 8(a) eligibility. On or about July 20, 2006, Qi Tech obtained SBA Section 8(a) certification.  Qi Tech's SBA User ID is P0762099 and its SBA 8(a) certification case number is 301234.  Qi Tech's Section 8(a) designation ran from 2006 to 2015 when Qi Tech graduated from the SBA's Section 8(a) program on or about July 20, 2015.

47.     Despite Qi listing himself as the sole owner and Chief Executive Officer, Qi retains no control over Qi Tech.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 12 -

48.     Despite Qi being the sole individual upon whom the disadvantaged status was based in securing Qi Tech's 8(a) eligibility, Ran controlled Qi Tech. And because Ran did not use his own disadvantaged status as an Asian Pacific American, he is, by regulation, a non-disadvantaged individual. Furthermore, Ran was a principal of a former Participant because he was Chief Executive Officer of and an owner in AdSTM.

49.     Even if Ran were to use his status as an Asian Pacific American to qualify Qi Tech as an 8(a) company, he would have had to obtain a waiver from the SBA, and the SBA would have had to find that AdSTM and Qi Tech were sufficiently separate entities so that AdSTM could exercise no control over Qi Tech.

50.     No such waiver was ever granted.

51.     As discussed in the following paragraphs, the notion that AdSTM and Qi Tech are separate companies is a legal fiction.

**AdSTM and Qi Tech operate as one company.**

52.     Since 2009, AdSTM and Qi Tech were in practice one company working together to win 8(a) contracts after AdSTM graduated from the 8(a) program in 2008.

53.     Ran served as AdSTM's Chief Executive Officer until 2014 and also certified on 8(a) bids that he was Qi Tech's Chief Executive Officer or Director.

54.     Ran controls all aspects of both AdSTM's and Qi Tech's operations.

55.     Each year Qi Tech compensates Ran in various amounts, some totaling nearly half a million dollars.

a.  In or around 2010, Ran received $170,665.09 from Qi Tech.

b.  In or around 2011 Ran received $183,643.59 from Qi Tech.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 13 -

    c.  In or around 2012 Ran received $372,326.72 from Qi Tech.

    d.  In or around 2013 Ran received $404,724.76 from Qi Tech.

    e.  In or around 2014 Ran received $461,795.41 from Qi Tech.

56.    While Qi is listed as Qi Tech's sole owner, President, and Chief Executive Officer with the SBA, Qi does not manage or control any aspect of Qi Tech's operations.  Ran marketed himself as holding these positions when submitting contract proposals.

57.    Since its founding, Qi has worked as an employee or consultant for other companies and never came to Qi Tech's offices while participating in the 8(a) program.  Indeed, at the same time Qi was purportedly the President and Chief Executive Officer of Qi Tech, he worked as an Independent Consultant to EMC, a Software Development Engineer with Del/Quest Software, and a Programmer Analyst with the Department of State.

58.    Qi Tech held consulting contracts with other businesses, but did not contract with the United States before AdSTM graduated from the SBA Section 8(a) program.

59.    Qi Tech's company structure remains part of AdSTM.  Qi Tech's employees report to Ran and other managers at AdSTM rather than a management structure at Qi Tech. This included Qi Tech's accountants, human resources staff, and program manager. Additionally, numerous Qi Tech employees wear dual hats, completing work for both AdSTM and Qi Tech.

60.    Prior to in or around late 2014 or early 2015, Qi Tech did not employ any business development staff, and AdSTM completed all business development work and proposals for Qi Tech.  At that time, Qi Tech hired several business development staff, but required those employees to report to Relator Guan, an AdSTM employee.  The AdSTM

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 14 -

business development staff that completed all Qi Tech's business development, including Qi Tech's contract proposals, reported to Ran and never to Qi.

61.     From 2009 to 2014, Ran either signed all contract paperwork representing he was either Qi Tech's Chief Executive Officer or Director or instructed another employee to sign on his behalf.

**Relator Guan joins AdSTM.**

62.     In or about 2008 relator Guan began working for AdSTM as a Data Analyst.

63.     When Guan arrived at AdSTM, David Moreau handled all government contract proposals.

64.     In or about 2010 relator Guan became involved in AdSTM's government contract proposals.

65.     Ran directed relator Guan to pitch Qi Tech as the primary contractor and AdSTM as the subcontractor for all service work with United States government agencies because Ran wanted the two companies to compete for preferential election under Section 8(a) status.

66.     Ran also directed relator Guan to pitch Qi Tech as the primary contractor because AdSTM had already graduated from the Section 8(a) program.

67.     Ran instructed relator Guan to include language in the proposals that Qi Tech was an "independent entity" from any associated sub-contractors and that 51% of the contract work was being performed by the primary contractor.

68.     At this time AdSTM received a significant portion of its revenue from two 8(a) set-aside contracts, Contract Nos. W91CG-06-C-0001 and NRC-08-07-418, where it was the Prime Contractor.  These were awarded to AdSTM while it was a Section 8(a) certified business.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 15 -

69.     AdSTM graduated from 8(a) program in 2008, and it was not eligible to bid the two contracts' follow-on rebid upon expiration in 2010 and 2011.

70.     In or about 2009, in order to maintain the revenue and obtain direct control of the follow-on contracts, Ran and Qi agreed to use Qi Tech's 8(a) status to bid the follow-on contracts' solicitation.

71.     Ran controlled Qi Tech's management and in exchange for this arrangement paid Qi approximately $200,000 from Qi Tech when AdSTM successfully won the follow-on contracts for Qi Tech.

72.     Based on this scheme, Ran directed AdSTM's staff to register Qi Tech on CCR and ORCA, a Federal Government database registry which is essential for any company to conduct business with the Federal Government.

73.     Qi Tech listed Ran as its registered point of contact.  Furthermore, Ran directed AdSTM staff to establish all Qi Tech's business e-mail hosting services.

74.     AdSTM obtained Qi Tech's ACES Certificate through IdenTrust certification service. In this application form, which was notarized, Ran signed his name as Qi Tech's Chief Executive Officer.

**AdSTM attempts to cover up the false misrepresentations.**

75.     After Qi Tech won the follow-on contracts, Ran attempted to conceal the false misrepresentations to the government and place some distance between AdSTM and Qi Tech on paper.  But the two companies continued *de facto* operating as before with Ran retaining control over both entities.

76.     Ran directed AdSTM's Senior Manager and HR to hire supporting staff as Qi

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 16 -

Tech's employees (Accounting, HR staff, contract specialist or Program Manager) to show that Qi Tech was managed and operated as an independent entity.  But all of the support staff Qi Tech hired is co-located in AdSTM's office.  The lone exception is Mike Enright, Vice President, who is a full-time employee of another company working out of a highly classified facility and unable to attend to Qi Tech work during the day.  Enright never reported to Qi Tech, but did report to AdSTM's department manager, Senior Manager, or directly to Ran.

77.     Ran directed AdSTM's staff to change Qi Tech's officially registered address from AdSTM's address to a virtual office building several blocks away.  Ran also directed AdSTM's staff to use 8229 Boone Blvd., Suite 521, Vienna, Virginia 22182 as Qi Tech's office address in some cases, while actually Suite 521 is exactly the same physical location as Suite 520, which is AdSTM's office location.

78.     All Qi Tech's support staff remains co-located in AdSTM's physical office, and Qi Tech keeps all Qi Tech's contract files, accounting records, financial records, and Human Resource record at AdSTM's physical office.

79.     Ran controlled Qi Tech's bank accounts and directed where payments were made. To transfer revenue from Qi Tech to AdSTM, Ran directed AdSTM's supporting staff to charge part of their salary to Qi Tech, and to charge Qi Tech with other services such as office space rent, office supply purchase, etc.  Ran also paid himself significantly high salaries directly from Qi Tech.  And Ran reimbursed personal travel from Qi Tech under his own direction.

80.     In or around 2014, the Defense Security Service (DSS) suspended AdSTM's Top Secret Facility Clearance due to a series of violations on security management issues, one being that Ran did not have a clearance.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 17 -

**Qi Tech Contracts Obtained Through False Statement.**

81.     As part of its fraudulent scheme, Bing Ran, through Qi Tech, and conspiring with all other defendants, made numerous false representations to the SBA about Qi Tech's control. Despite being a non-disadvantaged individual by regulation, Ran completely controlled Qi Tech and used this control to obtain and benefit from 8(a) set-aside contracts, frustrating the purpose of the 8(a) program and denying these benefits to legitimate 8(a) companies.

82.     The Nuclear Regulatory Commission awarded Contract No. NRC-08-09-305 to Qi Tech in or around March 2009.

83.     The purpose of the contract was for engineering, program management, and support services.

84.     The contract's description of requirements states, "Procurement of personnel with scientific and technical expertise applicable to nuclear safety and security regulations, including operating nuclear power plants, power plants under planned or under construction and radioactive sources."

85.     The contract's total value was $983,893.28.

86.     After all modifications and adjustments, the contract's value was $983,025.85.

87.     While Ran listed Qi Tech as the prime contractor, AdSTM prepared the entire proposal package, including the Technical Proposal and the Cost Proposal.

88.     When Qi Tech submitted the proposal for Contract No. NRC-08-09-305 on July 13, 2009, Defendant Ran signed the proposal to the NRC Project Officer, John Ramsey.

89.     Ran signed the proposal cover letter, which was on Qi Tech letterhead, and represented that he was Qi Tech's Chief Executive Officer.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management. Inc. et al.*

- 18 -

90.     In this proposal letter, Ran asked the NRC project Officer to return the materials to "Qi Tech, LLC, ATTN: Dr. Bing Ran, 8300 Old Courthouse Road, Suite 211, Vienna, Virginia 22182."

91.     The United States made the following payments to Qi Tech for Contract No. NRC-08-09-305:

    a.  In or around March 2009 the United States paid $500,000 to Qi Tech;

    b.  In or around June 2009 the United States paid $372,173 to Qi Tech; and

    c.  In or around November 2009 the United States paid $111,000 to Qi Tech.

92.     The Nuclear Regulatory Commission awarded Contract No. NRC-08-09-306 to Qi Tech in or around September 2009.

93.     The purpose of the contract was for engineering, program management, and support services.

94.     The contract's description of requirements states, "The contractor shall provide the NRC with personnel who possess specific technical and scientific expertise applicable to nuclear safety and security regulations, including operating nuclear power plants, nuclear power plants planned or under construction, radioactive sources, materials and waste to assist the NRC's Office of International Programs in providing continuous and uninterrupted transfer of nuclear related assistance."

95.     The contract's total value was $11,260,148.11.

96.     After all modifications and adjustments, the contract's value was $11,253,698.89.

97.     While Ran listed Qi Tech as the prime contractor, AdSTM prepared the entire proposal package, including the Technical Proposal and the Cost Proposal.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 19 -

98.     In response to claims submitted by Qi Tech on or around the same time, the United States made the following payments, among others, to Qi Tech for Contract No. NRC-08-09-306:

   a. In or around September 2009 the United States paid $875,000 to Qi Tech;

   b. In or around December 2009 the United States paid $2,000,000 to Qi Tech;

   c. In or around September 2010 the United States paid $100,000 to Qi Tech;

   d. In or around November 2010 the United States paid $1,000,000 to Qi Tech;

   e. In or around June 2011 the United States paid $1,000,000 to Qi Tech;

   f. In or around August 2011 the United States paid $1,637,910 to Qi Tech;

   g. In or around May 2012 the United States paid $600,000 to Qi Tech;

   h. In or around July 2012 the United States paid $300,000 to Qi Tech;

   i. In or around November 2012 the United States paid $350,000 to Qi Tech;

   j. In or around January 2013 the United States paid $800,000 to Qi Tech;

   k. In or around May 2013 the United States paid $700,000 to Qi Tech;

   l. In or around September 2013 the United States paid $500,000 to Qi Tech;

   m. In or around November 2013 the United States paid $1,000,000 to Qi Tech; and

   n. In or around April 2014 the United States paid $390,788.89 to Qi Tech.

99.     The Nuclear Regulatory Commission awarded Contract No. NRC-HQ-11-C080057 to Qi Tech in or around September 2011.

100.    The purpose of the contract was for engineering, program management, and support services.

101.    The contract's description of requirements states, "Infrastructure Support for

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

Armenian Nuclear Regulatory Authority."

102.    The contract's total value was $292,932.44.

103.    After all modifications and adjustments, the contract's value was $292,459.35.

104.    While Ran listed Qi Tech as the prime contractor, AdSTM prepared the entire proposal package, including the Technical Proposal and the Cost Proposal.

105.    The Department of Transportation awarded Contract No. DTFT60-11-D-00013 to Qi Tech in or around September 2011.

106.    The purpose of the contract was for administrative and general management services.

107.    The contract's description of requirements states, "Contract support services for FTA's State Management Review Program for FY 2012.  The contractor shall provide all personnel, supervision as non-personal services necessary to perform State Management Reviews and Workshops."

108.    The contract's total value was approximately $3,130,000.

109.    In response to claims submitted by Qi Tech on or around the same time, the United States made the following payments, among others, to Qi Tech for Contract No. DTFT60-11-D-00013:

     a.   In or around September 2011 the United States paid $564,720 to Qi Tech;

     b.   In or around December 2011 the United States paid $70 to Qi Tech;

     c.   In or around September 2012 the United States paid $604,294 to Qi Tech;

     d.   In or around February 2014 the United States paid $426,184 to Qi Tech;

     e.   In or around January 2015 the United States paid $695,044 to Qi Tech;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 21 -

  f. In or around August 2015 the United States paid $575,000 to Qi Tech;

  g. In or around May 2016 the United States paid $26,500 to Qi Tech; and

  h. In or around September 2016 the United States paid $812,299 to Qi Tech.

 110. The National Highway Traffic Safety Administration awarded Contract No. DTNH-22-12-C-00261 to Qi Tech in or around September 2012.

 111. The purpose of the contract was for research and development in the social sciences and humanities.

 112. The contract's description of requirements states, "NiTS Technical Support."

 113. The contract's total value was $499,906.41.

 114. In response to claims submitted by Qi Tech on or around the same time, the United States made the following payments, among others, to Qi Tech for Contract No. DTNH-22-12-C-00261:

  a. In or around September 2012 the United States paid $40,000 to Qi Tech;

  b. In or around September 2012 the United States paid $103,632.75 to Qi Tech;

  c. In or around June 2013 the United States paid $60,000 to Qi Tech;

  d. In or around November 2013 the United States paid $65,523.50 to Qi Tech;

  e. In or around March 2014 the United States paid $100,620 to Qi Tech; and

  f. In or around May 2016 the United States paid $103,130.16 to Qi Tech.

 115. The Nuclear Regulatory Commission awarded Contract No. NRC-HQ-07G-14-C-0001 to Qi Tech in or around September 2014.

 116. The purpose of the contract was for engineering, program management, and professional support services.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 22 -

117.    The contract's description of requirements states, "International Regulatory Assistance."

118.    The contract's total value after all modifications and adjustments was $12,258,402.49.

119.    In response to claims submitted by Qi Tech on or around the same time, the United States made the following payments, among others, to Qi Tech for Contract No. NRC-HQ-07G-14-C-0001:

     a.   In or around September 2014 the united States paid $800,000 to Qi Tech;

     b.   In or around April 2015 the United States paid $1,500,000 to Qi Tech;

     c.   In or around August 2015 the United States paid $40,000 to Qi Tech;

     d.   In or around October 2015 the United States paid $1,500,000 to Qi Tech;

     e.   In or around May 2016 the United State paid $1,000,000 to Qi Tech;

     f.   In or around August 2016 the United States paid $275,000 to Qi Tech;

     g.   In or around October 2016 the United States paid $1,000,000 to Qi Tech;

     h.   In or around March 2017 the United States paid $900,000 to Qi Tech; and

     i.   In or around August 2017 the United States paid $1,945,000 to Qi Tech.

120.    While Ran listed Qi Tech as the prime contractor, AdSTM prepared the entire proposal package, including the Technical Proposal and the Cost Proposal.

121.    The Nuclear Regulatory Commission awarded Contract No. NRC-HQ-84-14-C-0013 to Qi Tech on or about September 2014.

122.    The purpose of the contract was for Professional and Management Development Training.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 23 -

123.    The contract's description of requirements states, "Reactive Inspection Leadership Training (RILT) Development and Delivery RFQ and Award."

124.    The contract's total value was $735,463.61.

125.    After all modifications and adjustments, the contract's value was $878,518.34.

126.    In response to claims submitted by Qi Tech on or around the same time, the United States made the following payment, among others, to Qi Tech for Contract No. NRC-HQ-84-14-C-0013.

    a.    In or around September 2014 the United States paid $519,646.87 to Qi Tech.

127.    The Department of the Army awarded Contract No. W91C9G-11-C-0001, in or around August 2011.

128.    The purpose of the contract was for administrative management and general management consulting services.

129.    The contract's description of requirements states, "Joint Program Office Support – Base."

130.    The contract's total value was $27,185,620.20.

131.    After all modifications and adjustments, the contract's value was $31,664,933.78.

132.    The Department of the Army previously awarded Contract No. W91C9G-06-C-0001 to AdSTM before AdSTM graduated from the SBA Section 8(a) program.

133.    Ran bid on the contract using Qi Tech as the prime offeror and AdSTM as the subcontractor.

134.    While Ran listed Qi Tech as the prime contractor, AdSTM prepared the entire proposal package, including the Technical Proposal and the Cost Proposal.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

135.   Qi Tech listed Mike Enright as the contract's program manager.

136.   Gary Bell, AdSTM's CEO, then Vice President, and the contract's initial manager, continued performing on the follow-on contract.

137.   In response to claims submitted by Qi Tech on or around the same time, the United States made the following payments, among others, to Qi Tech for Contract No. W91C9G-11-C-0001:

a.  In or around August 2011 the United States paid $2,000,000 to Qi Tech;

b.  In or around September 2011 the United States paid $64,921.50 to Qi Tech;

c.  In or around October 2011 the United States paid $2,431,875.88 to Qi Tech;

d.  In or around May 2012 the United States paid $181,299.48 to Qi Tech;

e.  In or around May 2012 the United States paid $700,000 to Qi Tech;

f.  In or around September 2012 the United States paid $300,000 to Qi Tech;

g.  In or around February 2013 the United States paid $1,896,045.63 to Qi Tech;

h.  In or around June 2013 the United States paid $126,272.05 to Qi Tech;

i.  In or around July 2013 the United States paid $30,000 to Qi Tech;

j.  In or around September 2013 the United States paid $5,648,503.47 to Qi Tech;

k.  In or around December 2013 the United States paid $50,000 to Qi Tech;

l.  In or around March 2014 the United States paid $203,853.65 to Qi Tech;

m.  In or around April 2014 the United States paid $60,000 to Qi Tech;

n.  In or around September 2014 the United States paid $900,000 to Qi Tech;

o.  In or around September 2014 the United States paid $7,399.20 to Qi Tech;

p.  In or around September 2014 the United States paid $607,240 to Qi Tech;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 25 -

q. In or around September 2014 the United States paid $1,640,558.12 to Qi Tech;

r. In or around October 2014 the United States paid $30,000 to Qi Tech;

s. In or around November 2014 the United States paid $1,157.64 to Qi Tech;

t. In or around December 2014 the United States paid $100,000 to Qi Tech;

u. In or around February 2015 the United States paid $2,000,000 to Qi Tech;

v. In or around July 2015 the United States paid $837,509.08 to Qi Tech;

w. In or around July 2015 the United States paid $7,011.98 to Qi Tech;

x. In or around July 2015 the United States paid $4,100,000 to Qi Tech;

y. In or around August 2015 the United States paid 25,000.82 to Qi Tech;

z. In or around September 2015 the United States paid $641,489.28 to Qi Tech;

aa. In or around September 2015 the United States paid $1,697,862.40 to Qi Tech;

bb. In or around August 2016 the United States paid $1,157,833.60 to Qi Tech; and

cc. In or around September 2016 the United States paid $1,632,075.90 to Qi Tech.

138.    The Department of the Navy awarded Contract No. N00178-11-D-6657, in or around September 2013.

139.    The purpose of the contract was for engineering and program management support.

140.    The contract's description of requirements states, "Operational Support."

141.    The contract's total value is $21,279,510.

142.    To date, the United States has paid $19,003,217 to Qi Tech, and performance on the contract is ongoing.

143.    In response to claims submitted by Qi Tech on or around the same time, the

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 26 -

United States made the following payment, among others, to Qi Tech for Contract No. N00178-11-D-6657:

    a.  In or around September 2013 the United States paid $702,850 to Qi Tech;

    b.  In or around September 2013 the United States paid $678,981 to Qi Tech;

    c.  In or around March 2014 the United States paid $1,543,586 to Qi Tech;

    d.  In or around June 2014 the United States paid $45,500 to Qi Tech;

    e.  In or around August 2014 the United States paid $596,817 to Qi Tech;

    f.  In or around September 2014 the United States paid $23,300 to Qi Tech;

    g.  In or around November 2014 the United States paid $97,300 to Qi Tech;

    h.  In or around December 2014 the United States paid $2,101,952 to Qi Tech;

    i.  In or around January 2015 the United States paid $92,225 to Qi Tech;

    j.  In or around May 2015 the United States paid $43,600 to Qi Tech;

    k.  In or around May 29, 2015 the United States paid $71,432 to Qi Tech;

    l.  In or around June 2015 the United States paid $667,500 to Qi Tech;

    m.  In or around July 2015 the United States paid $10,140 to Qi Tech;

    n.  In or around August 2015 the United States paid $794,506 to Qi Tech;

    o.  In or around August 2015 the United States paid $32,022 to Qi Tech;

    p.  In or around September 2015 the United States paid $20,969 to Qi Tech;

    q.  In or around September 2015 the United States paid $49,700 to Qi Tech;

    r.  In or around November 2015 the United States paid $72,337 to Qi Tech;

    s.  In or around December 2015 the United States paid $3,107,621 to Qi Tech;

    t.  In or around January 2016 the United States paid $61,575 to Qi Tech;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 27 -

u.  In or around March 2016 the United States paid $540 to Qi Tech;

v.  In or around June 2016 the United States paid $5,872 to Qi Tech;

w.  In or around August 2016 the United States paid $3,235,007 to Qi Tech;

x.  In or around September 2016 the United States paid $195,000 to Qi Tech;

y.  In or around September 2016 the United States paid $1,100 to Qi Tech;

z.  In or around November 2016 the United States paid $459,501 to Qi Tech;

aa. In or around December 2016 the United States paid $341,898 to Qi Tech;

bb. In or around March 2017 the United States paid $600 to Qi Tech;

cc. In or around August 2017 the United States paid $4,160,529 to Qi Tech;

dd. In or around December 2017 the United States paid $76,900 to Qi Tech; and

ee. In or around December 2017 the United States paid $1,000 to Qi Tech.

**AdSTM and ForeData Technology create a joint venture to bid on RFP No. W15QKN-16-R-0050.**

144.    On or about December 9, 2005 Defendant Song formed ForeData Technology. Ran recruited Song to use ForeData as he does Qi Tech to obtain 8(a) set-aside contracts. While Song is listed as ForeData's nominative owner, Ran controls ForeData with respect to all aspects surrounding the company's bids on government contracts through AFSJV.

145.    ForeData Technology's principal office is listed as 313 Greenhill Street, Great Falls, Virginia 22066, which is Song's personal residence. However, ForeData Technology's registration with the General Service Administration's System for Award Management, a registration required for all government contractors, states ForeData Technology's principal

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 28 -

office is 8229 Boone Blvd., Suite 521, Vienna, Virginia 22182, the same address as AdSTM and

Qi Tech at the time.

146.   ForeData Technology obtained SBA Section 8(a) certification on or about July

25, 2011, and it will graduate from the SBA's Section 8(a) program on or about July 25, 2020.

ForeData Technology's SBA User ID is P0731633, and its SBA 8(a) certification case number is

304801.

147.   On or about June 1, 2015 Defendant Ran formed AFSJV as a Virginia

corporation. AFSJV is a joint-venture between AdSTM and ForeData. Ran used this joint

venture to again fraudulently bid on an 8(a) set-aside contract. This joint venture is the only

government contract ForeData Technology supports to date.

148.   AFSJV's principal office is listed as 8229 Boone Blvd., Suite 520, Vienna,

Virginia 22182. This was the same principal office as AdSTM and Qi Tech. AFSJV later

moved to its current principal place of business at 7925 Jones Branch Drive, Suite 5400,

McLean, Virginia 22102, which is AdSTM's and Qi Tech's current office location. AFSJV's

registration with the Virginia Secretary of the Commonwealth still lists AFSJV's principal office

at 8229 Boone Blve., Suite 520, Vienna, Virginia 22182.

149.   AFSJV does not have SBA 8(a) certification, but AFSJV received SBA Joint

Venture 8(a) certification on September 26, 2016. AFSJV will exit the SBA's Joint Venture 8(a)

certification on September 26, 2018. AFSJV's SBA User ID is P1985116.

150.   AFSJV's registration with the SBA lists Defendant Song as the Chief Executive

Officer and Defendant Ran as AFSJV's Director.

151.   The joint venture bid upon 8(a) set-aside competitive solicitation number RFP

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 29 -

W15QKN-16-R-0050 issued by Army Contracting Command.

152.     This contract provided business operations support to the federal government under the Firm Fixed Price Contract for an eight month period.

153.     On behalf of AFSJV, Relator Guan executed the contract on behalf of ForeData Technology with an address of 8229 Boone Blvd., Suite 521, Vienna, VA 22182 and Gary Bell, listed as the CEO of AdSTM with an address of 8229 Boone Blvd., Suite 520, Vienna, VA 22182.  Both addresses are to the same physical office.

154.     This contract held a value of $820,400.62.

155.     The Army declined to renew the contract because the joint venture did not perform well.

**The False Claims Submitted by Defendants Were Material to the Government's Decision to Award and Pay.**

156.     The SBA's Section 8(a) program allows the United States to set aside contracts for small and minority owned businesses.

157.     Only bona fide Section 8(a) businesses can submit proposals for these set-aside contracts.

158.     In order to be a bona fide Section 8(a) business, it must be controlled by a disadvantaged individual.

159.     Furthermore, once that business graduates from the Section 8(a) program neither that business, nor that disadvantaged individual is eligible for Section 8(a) set-aside contracts again.

160.     AdSTM graduated from the SBA Section 8(a) program in 2008, and Ran

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 30 -

continued to control other entities, including Qi Tech and Foredata, through AdSTM.

161.    Defendants Ran and AdSTM knowingly used the individual Defendants to obtain Section 8(a) certification for other entities so he could bid on Section 8(a) set-aside government contracts.  In so doing, Ran personally benefited through the exorbitant payments he received from these other entities as each gained additional work.  And AdSTM benefited because Ran could install AdSTM, a graduate of the 8(a) Program, as a subcontractor to Qi Tech.

162.    Ran did not use his own Asian Pacific American status to qualify any of the corporate defendants for the 8(a) program.  And because he did not do so, he was, by regulation, a non-disadvantaged individual.

163.    Ran was as a non-disadvantaged individual controlling the corporate defendants, while also being a former principal of a Participant (AdSTM) and also receiving compensation higher than the corporate defendants' owners on paper.

164.    All Defendants knew the level of control Ran exercise over the Corporate Defendants because Ran executed the proposals for the Corporate Defendants with a representation that he was an Officer or Director.

165.    But-for all Defendants' false representations and certifications that all corporate Defendants were bona fide Section 8(a) companies, and that a disadvantaged individual controlled each Corporate Defendant, the Corporate Defendants would not have been able to obtain 8(a) certification and subsequently would not have been able to bid on all 8(a) set aside contracts won by the Corporate Defendants.

166.    Thus, the United States, but-for Defendants' fraudulent conduct, would not have awarded any set-aside government contracts to the Corporate Defendants while Ran, as a non-

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 31 -

disadvantaged individual, exercised complete control over them.

167.     The United States was damaged because these set-aside contracts would have gone to bona fide Section 8(a) businesses, and bona fide disadvantaged minority owned businesses would have received the revenue and benefits from the Section 8(a) set-aside contracts.

168.     All Defendants through their false representations and certifications frustrated the purpose of the SBA's Section 8(a) program through their fraud in the inducement.

**COUNT I**
**Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**Fraud in the Inducement**
**(As to All Defendants)**

169.     Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

170.     The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

171.     Courts recognize a fraud in the inducement theory of liability under the False Claims Act where a contract benefit was originally obtained through false statements or fraudulent conduct.

172.     In a fraud in the inducement claim, the fraud "need not spend itself within the execution of the contract." Rather, where a contract was obtained based upon false statements or fraudulent conduct, every claim for payment which was based on the initial fraudulent action is inherently false.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

173.    Ran controlled Qi Tech, ForeData Technology, and AFSJV for the purposes of

bidding on Contract Nos. NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTFT60-

11-D-00013, DTNH-22-12-C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013,

W91CG-11-C-0001, N00178-11-D-6657, and W15QKN-16-C-0105.

174.    As articulated in the foregoing paragraphs, Qi Tech and AFSJV, at the direction

of Ran and AdSTM, made false representations to the United States in order to obtain Contract

Nos. NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTFT60-11-D-00013, DTNH-

22-12-C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001,

N00178-11-D-6657, and W15QKN-16-C-0105.  Qi Tech and AFSJV, in an effort to obtain these

contracts, knowingly made false representations concerning the control of each entity as it relates

to each entity's Section 8(a) status.

175.    Qi Tech's and AFSJV's fraudulent misrepresentations to the United States about

their Section 8(a) status led the United States to believe that Qi Tech and AFSJV met or would

meet the requisite Section 8(a) minority owned business status, in particular the requirement that

it be controlled by a disadvantaged individual.

176.    The United States relied on these false representations in awarding Contract Nos.

NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTFT60-11-D-00013 ,DTNH-22-12-

C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001, N00178-11-

D-6657, and W15QKN-16-C-0105 to Qi Tech and AFSJV.  But for these false representations,

the United States would not have awarded Contract Nos. NRC-08-09-305, NRC-08-09-306,

NRC-HQ-11- C080057, DTFT60-11-D-00013, DTNH-22-12-C-00261, NRC-HQ-07G-14-C-

0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001, N00178-11-D-6657, and W15QKN-16-C-

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 33 -

0105 to Qi Tech and AFSJV. Accordingly, the false representations were material to the government's decision to award the contracts.

177.    Defendants damaged the United States by all aforementioned misrepresentations because these contracts would have been awarded to legitimate Section 8(a) small and minority owned businesses.

## COUNT II
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### False Certification
### (As to All Defendants)

178.    Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

179.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

180.    Courts recognize a false certification theory of liability under the False Claims Act where a contractor falsely certifies that it is in compliance with regulations or contractual terms that are prerequisites to the payment of government funds.

181.    False certifications may be express or implied.

182.    An express false certification applies where a recipient of government funds falsely certifies that it is in compliance with regulations which are prerequisites to the government's decision to pay for the services rendered by the contractor.

183.    An implied false certification theory of liability applies where a recipient of government funds makes a claim for payment from the government without disclosing that it

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 34 -

violated regulations or contractual provisions that affect its eligibility for payment.

184.    As discussed throughout this complaint, Defendants are required to submit to the United States annual certifications that accurately state the entity remains in compliance with all regulations surrounding the 8(a) program, including that the entity remains owned *and controlled* by a disadvantaged individual.

185.    Accurately submitting these certifications on an annual basis are part of the contracts and the SBA's 8(a) program and are essential to maintaining 8(a) contracts and receiving payments.

186.    Furthermore, Defendants, in submitting claims for work performed on contracts that are set aside for 8(a) companies, certify that they are, in fact, bona fide 8(a) companies.

187.    The Defendants falsely certified continuing 8(a) compliance because the Corporate Defendants were not controlled by a disadvantaged individual.  Such requirements are material to the government's decision to make payment.

188.    The Defendants directly submitted false claims for payment to the United States.

189.    The United States has been damaged by all aforementioned misrepresentations.

**COUNT III**
**Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**Creating a False Record or Statement Material to a False Claim**
**(As to All Defendants)**

190.    Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

191.    The False Claims Act imposes liability on any person or entity that knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 35 -

fraudulent claim.

192.     In support of bidding on section 8(a) contracts Defendants created a false business record in the form of false 8(a) applications, annual 8(a) certifications, 8(a) set-aside contract proposals, and invoices for payment.

193.     These false records led the United States to believe that the Corporate Defendants were bona fide 8(a) companies controlled by a disadvantaged individual and sufficiently separate from each other.

194.     Defendants created these false records in order to induce the United States to award 8(a) set-aside contracts and pay the Defendants' fraudulent claims for payment, and the United States did so.

195.     Though presentment of these false records is not required in order to establish liability under 31 U.S.C. § 3729(a)(1)(B), the Defendants did present these false records to the United States.

196.     The United States has been damaged by all aforementioned misrepresentations.

**COUNT IV**
**Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)**
**Conspiracy to violate the FCA**
**(As to All Defendants)**

197.     Relator incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

198.     Defendants violate the False Claims Act, 31 U.S.C. § 3729(a)(1)(C), when they conspire to knowingly present or cause to be presented, false claims to the government through the SBA's 8(a) program.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 36 -

199.    Defendants, through their corporate and personal relationships, conspire to submit false claims to the government.

200.    Defendants implemented a scheme whereby the individual defendants Qi and Song qualified Participants in the SBA's Section 8(a) program and then turned the entity over to individual defendant Ran.

201.    Ran and the individual defendants entered into an agreement for the individual defendants to turn their Section 8(a) eligible Participants over to Ran for him to completely control.

202.    Defendants bid on and submitted claims to the United States for payments on Contract Nos. NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTNH-22-12-C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001, N00178-11-D-6657, and W15QKN-16-C-0105 to Qi Tech and AFSJV.

203.    Claims submitted on Contract Nos. NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTFT60-11-D-00013, DTNH-22-12-C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001, N00178-11-D-6657, and W15QKN-16-C-0105 to Qi Tech and AFSJV were false or fraudulent because the Defendants falsely certified continuing 8(a) compliance because the Corporate Defendants were not controlled by a disadvantaged individual.  Such requirements are material to the government's decision to make payment.

204.    Defendants made certifications to the SBA through submitting 8(a) applications, bidding on 8(a) set-aside contracts, and submitting claims for payment on Contract Nos. NRC-08-09-305, NRC-08-09-306, NRC-HQ-11- C080057, DTFT60-11-D-00013, DTNH-22-12-C-00261, NRC-HQ-07G-14-C-0001, NRC-HQ-84-14-C-0013, W91CG-11-C-0001, N00178-11-D-

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 37 -

6657, and W15QKN-16-C-0105.

205.    During the existence of the conspiracy Defendants performed overt acts by submitting false contract proposals and annual 8(a) re-certifications to the United States.  These acts were in furtherance of the conspiracy to commit fraud on and induce false payments by the United States.

206.    The United States has been damaged by all aforementioned misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE, Relator Fei Guan, acting on behalf of and in the name of the United States of America and on his own behalf, demands and prays that judgment be entered against all corporate and individual Defendants for violations of the federal False Claims Act:

(a) In favor of the United States against all corporate Defendants for treble damages to the United States from the submission of false claims and concealment of fraudulent investigative practices in violation of the contract at issue plus maximum civil penalties for each violation of the False Claims Act;

(b) In favor of Guan for the maximum damages allowed pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorneys' fees, and costs incurred by Relator;

(c) For all costs of the FCA civil action;

(d) In favor of Relator Guan and the United States for further relief as this Court deems to be just and equitable; and

(e) Such other relief as this Court deems just and appropriate.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

Respectfully Submitted,

       */s/ R. Scott Oswald*
R. Scott Oswald, VA Bar No. 41770
David L. Scher, VA Bar No. 47634
Andrew M. Witko, VA Bar No. 88114
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261–2803
(202) 261–2835 (facsimile)
soswald@employmentlawgroup.com
dscher@employmentlawgroup.com
awitko@employmentlawgroup.com

*Counsel for Relator Guan*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex rel. Guan v. Advanced Systems Technology and Management, Inc. et al.*

- 39 -